# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHERN DIVISION

In the Matter of:            }
MITCHELL DEWAYNE MIXSON   }   CASE NO. 11-81472-CRJ-13
SSN:  XXX-XX-0240        }
JESSICA MARIA MIXSON       }
SSN:  XXX-XX-9971        }   CHAPTER  13
                    Debtor(s).    }

## MEMORANDUM OPINION ON MOTION FOR HARDSHIP DISCHARGE DENYING THE MOTION AS TO DEBTOR MITCHELL MIXSON AND GRANTING HARDSHIP DISCHARGE AS TO DEBTOR JESSICA MIXSON

This case came before the Court on April 4, 2016 upon the Debtors' Motion for Hardship Discharge. The Debtors seek a hardship discharge pursuant to 11 U.S.C. § 1328(b) and assert that they have no prospects for income in the foreseeable future and are unable to fund their Chapter 13 Plan based on circumstances beyond their control. Appearing at the hearing were the Debtor, Jessica Mixson, counsel for the Debtors, Brandon Smith, and counsel for the Chapter 13 Trustee, Michelle Hatcher.

### FINDINGS OF FACT

The Debtors filed the above-styled Chapter 13 case on April 19, 2011.  On June 27, 2011, the Court confirmed the Debtors' Chapter 13 Plan.  Pursuant to the Confirmation Order, the Debtors were required to pay $632 per month to the Chapter 13 Trustee for 60 months.  In addition to the payment of certain administrative expenses, the confirmed Plan provided for the payment of mortgage arrearage in the approximate amount of $1,600 and a priority claim held by the Internal Revenue Service in the amount of $28,894.56.  The confirmed Plan sub-classed a student loan debt in the amount of $1,313.77 to be paid in full during years four and five of the Plan.  As confirmed, all other general unsecured claims were to receive a de minimis pro rata distribution.

The confirmed Plan has been modified three times for failure to pay. On March 13, 2012, the Court entered an Order Granting Trustee's Motion to Modify Chapter 13 Plan increasing Plan payments to $684 per month for the remaining 49 months of the Plan. In May of 2014, Plan payments increased to $798 per month pursuant to an Agreed Order on Trustee's Motion to Dismiss. Then on June 11, 2015, the Court entered an Order Granting Trustee's Motion to Modify Plan increasing payments to $1,089 per month beginning in June of 2015 for the remaining months of the Plan.

The confirmed Plan as modified was scheduled to pay out in April of 2016. According to the Trustee's records, the Debtors have paid in full the secured claim in the amount of $1,515.31 and the priority claim in the amount of $28,725.61. The Debtors have paid the student loan and all other general unsecured creditors a total of $1,042.51. To pay the case in full as modified, the Debtors owe a remaining balance of $1,850.

The Debtors are now divorced and Mitchell Mixson is no longer employed. On February 19, 2016, the Debtors filed Amended Schedule I showing that neither Debtor has any current income. At the hearing on the Motion for Hardship Discharge, Jessica Mixson testified that her ex-husband is incarcerated. Although he has not been sentenced, she anticipates that her ex-husband will be incarcerated for an extended period of time. The Debtor testified that she is unemployed as she cares for the Debtors' two young children ages three months and two years. Although the Debtor testified that she has worked at some point in the past, her ex-husband has been the sole provider for the family throughout the duration of this case. Accordingly, the Debtors' Plan payments have always been calculated based on Mitchell Mixson's income alone.

**CONCLUSIONS OF LAW**

The Court may grant a hardship discharge pursuant to 11 U.S.C. § 1328(b) at any time after confirmation if the debtor has not completed Plan payments, but only if the debtor satisfies the following requirements:

> (1) the debtor's failure to complete such payments is due to circumstances for which the debtor should not justly be held accountable;

> (2) the value, as of the effective date of the plan, of property actually distributed under the plan on account of each allowed unsecured claim is not less than the amount that would have been paid on such claim if the estate of the debtor had been liquidated under chapter 7 of this title on such date; and

> (3) modification of the plan under section 1329 of this title is not practicable.

11 U.S.C. § 1328(b).

The Debtors bear the burden of proof and must persuade the Court that they have satisfied each of these requirements before the Court is authorized under § 1328(b) to grant a hardship discharge. In re Wilson, 2016 WL 699553 *2 (Bankr. S.D. W. Va. 2016); In re Inyard, 532 B.R. 364, 366 (Bankr. D. Kan. 2015).

Under § 1328(b)(1), the Court must find that the failure to complete Plan payments "is due to circumstances for which the debtor should not be justly held accountable." This determination is a fact driven analysis, "with an emphasis properly focused on the nature and quality of the intervening event or events upon which the debtor relies." In re Wilson, 2016 WL 699553 *2 (Bankr. S.D. W. Va. 2016)(quoting In re Bandilli, 231 B.R. 836, 840 (B.A.P. 1st Cir. 1999)).

The courts are split under § 1328(b)(1) regarding "the level of severity of factual circumstances that will properly give rise to a hardship discharge" with some courts imposing a catastrophic event requirement while other courts refuse to read the word catastrophic into the

statute. *See* <u>In re Wilson</u>, 2016 WL 699553 *2 (Bankr. S.D. W. Va. 2016). In the case of <u>In re Nelson</u>, 135 B.R. 304, 306 (Bankr. N.D. Ill. 1991), the bankruptcy court found that economic hardships such as loss of business revenue and increased expenses were "not the type of catastrophic events such as death or disability which prevent a debtor, through no fault of his or her own, from completing payments..." *See also* <u>In re Cummins</u>, 266 B.R. 852, 855 (Bankr. N.D. Iowa 2001)(defining a catastrophic event as "being outside the control of those whom it hurts").

Addressing an issue of first impression, the First Circuit Bankruptcy Appellate Panel refused to read the word catastrophic into § 1328(b)(1), finding instead under the plain language of the statute there is no express requirement that a debtor prove the existence of a catastrophic event. Instead, bankruptcy courts should determine whether "the debtor is 'justly . . . accountable' for the plan's failure." <u>In re Bandilli</u>, 231 B.R. 836, 840 (1st Cir. B.A.P. 1999). "The word 'accountable' is comparatively mild to the emotionally-laden term 'catastrophic.'" *Id.* To determine whether a debtor is justly accountable for the Plan's failure, courts should consider the following:

a) whether the debtor has presented substantial evidence that he or she had the ability and intention to perform under the plan at the time of confirmation;

b) whether the debtor did materially perform under the plan from the date of confirmation until the date of the intervening event or events;

c) whether the intervening event or events were reasonably foreseeable at the time of confirmation of the Chapter 13 plan;

d) whether the intervening event or events are expected to continue in the reasonably foreseeable future;

e) whether the debtor had control, direct or indirect, of the intervening event or events; and

f) whether the intervening event or events constituted a sufficient and proximate cause for the failure to make the required payments.

*Id.*

In the case of <u>In re Edwards</u>, the bankruptcy court also refused to impose a catastrophic event requirement and held instead that § 1328(b)(1) is satisfied "[w]here a debtor is unable to complete payments under a Chapter 13 plan due to economic circumstances that did not exist nor were foreseeable at the time of confirmation of the plan, where those circumstances are beyond the debtor's control, and where the debtor has made every effort to overcome those circumstances but is unable to complete his plan payments." <u>In re Edwards</u>, 207 B.R. 728, 731 (Bankr. N.D. Fla. 1997).

To determine whether the failure to complete payments under the Plan is due to circumstances for which the Debtors should not justly be held accountable in this case, the Court must examine each Debtors' failure to pay separately under the unique circumstances of this case. Even without reading a catastrophic event standard into § 1328(b)(1), the Court finds that the Debtor, Mitchell Mixson, has not satisfied § 1328(b)(1). Mitchell Mixson has not demonstrated that his inability to complete Plan payments is due to circumstances beyond his control. The Debtor is no longer employed and unable to make Plan payments because he has been convicted of a crime for which it is anticipated he will be incarcerated for an extended period of time.

In the case of <u>In re Brown</u>, 2009 WL 801737 (Bankr. W.D. Mo. 2009), the bankruptcy court denied the debtor's Motion for Hardship Discharge where it was uncontested that her failure to make Plan payments was due to her husband's death, and the debtor had admittedly shot and killed her husband. Although the debtor had not been criminally charged with her husband's death, the debtor failed to demonstrate that her failure to pay was due to circumstances for which she should not justly be held accountable. Similarly, Mitchell Mixson's incarceration is not a circumstance beyond his

control.  Instead, the Court finds that  incarceration is a circumstance for which the Debtor should justly be held accountable.  *See also* <u>In re Starski,</u> 2014 WL 2030702  (N.D. Cal. 2014)(finding that the debtor's stated reason that he was marrying his girlfriend who had two children and was expecting a third child was not an "involuntary" circumstance for which the debtor should not justly be held accountable).   Accordingly, the Court finds that Mitchell Mixson has not met his burden of demonstrating that his failure to complete payments under the Plan is due to circumstances for which he should not justly be held accountable, and the Motion for Hardship Discharge must be denied as to Mr. Mixson.

As to Jessica Mixson, the Court finds that she has demonstrated that her inability to pay is due to circumstances for which she should not justly be held accountable pursuant to §1328(b)(1).  Mitchell Mixson has been the sole provider for the family throughout this case.  Jessica Mixson is no longer able to fund the Plan because her ex-husband is now incarcerated and unemployed.  This is not a circumstance under § 1328(b)(1) for which Jessica Mixson should be held justly accountable.

The Court further finds under § 1328(b)(3), that modification of the Plan  is not practicable.  Jessica Mixson was unemployed on the Petition date, and her prospects for employment in the near future are minimal given that she is caring for two children ages three months and two years.

Finally, the Court finds pursuant to § 1328(b)(2) that each unsecured creditor has received payments under the Plan with a value, as of the effective date of the Plan, that is not less than the amount that would have been paid on the claim if the estate had been liquidated on the effective date of the Plan because it appears that unsecured creditors would not have received anything in a Chapter 7 liquidation in this case.  In their Schedules, the Debtors did not list any nonexempt equity

in their real or personal property. The Debtors did not have any equity in nonexempt property that could be liquidated to pay creditors more than they have received under the confirmed Plan as modified.  Accordingly, the Court finds that Jessica Mixson is entitled to a hardship discharge.

A separate Order will be entered in conformity with this Memorandum Opinion denying the Motion as to Mitchell Mixson and granting the Motion as to Jessica Mixson.

Dated this the 14th day of April, 2016.

/s/  Clifton R. Jessup, Jr.
Clifton R. Jessup, Jr.
United States Bankruptcy Judge